# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# EASTERN DIVISION

| | |
|---|---|
| MARIA RIOS,<br><br>  Plaintiff,<br><br>vs.<br><br>DEERE & COMPANY,<br><br>  Defendant. | No. 15-CV-2075-LRR<br><br>**ORDER** |

## TABLE OF CONTENTS

I.   INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *1*

II.  RELEVANT PROCEDURAL BACKGROUND . . . . . . . . . . . . . . . . . . *1*

III. SUBJECT MATTER JURISDICTION. . . . . . . . . . . . . . . . . . . . . . . *2*

IV.  RELEVANT FACTUAL BACKGROUND. . . . . . . . . . . . . . . . . . . . . *2*
   *A.*   *The Plan.* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *2*
   *B.*   *Rios's Injury and Treatment* . . . . . . . . . . . . . . . . . . . . . . *3*
   *C.*   *Rios's Application for LTD Benefits* . . . . . . . . . . . . . . . . . . *7*
   *D.*   *Deere Denies LTD Benefits* . . . . . . . . . . . . . . . . . . . . . . *8*
   *E.*   *Rios Appeals Deere's Denial* . . . . . . . . . . . . . . . . . . . . . *8*

V.   STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . *10*

VI.  ANALYSIS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *11*
   *A.*   *Relevant Evidence* . . . . . . . . . . . . . . . . . . . . . . . . . . *11*
   *B.*   *Substantial Evidence* . . . . . . . . . . . . . . . . . . . . . . . . . *12*
   *C.*   *Conflict of Interest* . . . . . . . . . . . . . . . . . . . . . . . . . . *16*
   *D.*   *SSA's Determination of Disability* . . . . . . . . . . . . . . . . . . *16*

VII. CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . *17*

## *I. INTRODUCTION*

The matter before the court is Plaintiff Maria Rios's Complaint (docket no. 2).

## *II. RELEVANT PROCEDURAL BACKGROUND*

On August 11, 2015, Rios filed the Complaint, alleging that Defendant Deere &

Company ("Deere") wrongfully denied her claim for long-term disability ("LTD") benefits under the John Deere Long Term Disability Plan ("Plan"), thereby violating the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 et seq. *See* Complaint ¶¶ 1, 4, 7-12. On October 20, 2015, Deere filed an Answer (docket no. 15) generally denying liability and asserting affirmative defenses. On December 31, 2015, Rios filed her brief ("Rios Brief") (docket no. 19). On February 29, 2016, Deere submitted its brief ("Deere Brief") (docket no. 25). On March 1, 2016, Rios filed a Reply (docket no. 26).

Neither party requests oral argument, and the court finds that oral argument is unnecessary. The case is fully submitted and ready for decision.

### III. SUBJECT MATTER JURISDICTION

The court has federal question jurisdiction over this action, which arises under ERISA. *See* 29 U.S.C. § 1132(a)(1)(B); s*ee also* 28 U.S.C. § 1331 ("The district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States.").

### IV. RELEVANT FACTUAL BACKGROUND

#### A. *The Plan*

Rios is a resident of Cedar Falls, Iowa. *See* Complaint ¶ 2. In 2005, Rios began working for Deere as a Project Manager for Product Programs. *See* Administrative Record[1] ("AR") at 64, 113; Rios Brief at 2.

Rios was eligible to apply for LTD benefits under the Plan. AR at 6. Deere is the Plan Administrator and funded the Plan benefits. *Id*. at 3-4. An employee must be "totally disabled" to qualify for LTD benefits under the Plan. *Id*. at 6. Under the Plan:

An employee is deemed to be totally disabled when on

---

[1] The Administrative Record has been filed with the court in separate but consecutively paginated docket entries at docket nos. 18-1 though 18-6. The court shall refer to such consecutive pagination when citing to the Administrative Record.

2

> evidence satisfactory to [Deere] and [Deere's] Medical Director or the Director's designate, the employee is unable to perform the duties of the assigned job or any job for which the employee is or may reasonably become qualified based on education, training or experience due to a physical or mental condition caused by illness or injury.

*Id.* at 7. Employees applying for LTD benefits are required to "provide [Deere] with proof of continued disability. . . [which] may include information such as . . . statements from physicians outlining prior treatment and ongoing treatment for the disability." *Id.* at 9. Employees applying for LTD benefits may rely on a "[m]ental or non-organic disease as a cause for disability [but] must have a psychiatrist's certification that the [e]mployee's infirmity is of major and psychotic degree." *Id.*

If Deere denies an employee's application for LTD benefits, the employee may appeal. *Id.* at 12. The appeal must be made "within 180 days after receipt of a claim denial notice." *Id.* During the appeal, the Plan requires Deere to consider "all comments, documents, records, and other information, without regard to whether such information was submitted or considered in the initial claim decision. The review of the employee's claim denial will not defer to the initial determination made by the Plan Administrator or its delegate." *Id.* If the appeal requires consultation with a physician, the consulting physician must be someone "who was neither consulted in connection with the claim decision nor the subordinate of any such individual." *Id.*

### B. Rios's Injury and Treatment

In April 2013, Rios complained to doctors about frequent headaches of which she had a long history, and reported that she had increased stress due to a recent separation. *Id.* at 237, 239. On May 4, 2013, Rios reported that she was suffering from headaches and dizziness. *Id.* at 300-01. Medical imaging of her head revealed no abnormalities. *Id.*

On November 15, 2013, Rios fell down the stairs at work. *Id.* at 297; Deere Brief at 6. Medical imaging of her head and spine return no abnormal results. AR at 297-98,

3

338. On November 19, 2013, Rios visited the emergency room at Allen Hospital. *See id.* at 229. Rios received a head CT scan during her visit and the results revealed no abnormalities. *Id.* The next day, Rios was discharged from Allen Hospital with a diagnosis of post-concussion syndrome. *Id.* at 231.

On January 14, 2014, Rios visited Dr. Santhi Ilankeeran complaining of an inability to focus and "weird sensation[s] on her head." *Id.* at 229-30. Dr. Ilankeeran concluded that Rios had chronic migraines which could be due to underlying stress and anxiety. *Id.* Another CT scan revealed no abnormalities. *Id.* Rios did not believe she needed help for stress or anxiety. *Id.* at 230. On February 21, 2014, Rios visited her primary physician, Dr. Meredith Christ, and reported that she was suffering chills, stiffness, back pain, numbness in her extremities and blurry vision. *Id.* at 227-28. Dr. Christ opined that Rios could not return to work in her current state. *Id.* at 228. Dr. Christ determined that Rios would likely be able to return to her current position within two months. *Id.* at 398. On February 12, 2014, Rios began receiving Deere's salary continuance/short-term disability ("SAC") benefits. *Id.* at 96. On March 13, 2014, Dr. Christ examined Rios again; Rios's symptoms were unchanged. *Id.* at 226.

On April 3, 2014, Dr. Deena Nasr saw Rios at Mayo Clinic. *Id.* at 386. Dr. Nasr diagnosed Rios with possible migraine headaches with increased intracranial pressure and nonspecific intermittent paresthesias in the hands and feet. *Id.* at 388-89. On April 4, 2014, Rios underwent a lumbar puncture, which indicated that her pressure was normal. *Id.* at 376, 379. On April 11, 2014, Dr. Megan Chock examined Rios at Mayo Clinic and diagnosed her with low back pain, left leg pain and headaches. *Id.* at 356-58. On April 24, 2014, Dr. Christ again examined Rios and noted that Rios did "not appear to be in any acute distress" and was "[m]oving around normally." *Id.* at 225.

On May 31, 2014, Rios visited Covenant Medical Center complaining of a severe headache. *Id.* at 133. The results of a head CT scan were normal. *Id.* at 135. On June 1, 2014, an MRI of Rios's brain and neck "revealed no acute findings." *Id.* at 128-29.

4

On July 17, 2014, Dr. Francis Huttinger examined Rios at the Neurology Clinic at Mayo Clinic. *Id.* at 338. Dr. Huttinger diagnosed Rios with chronic migraine headaches and chronic pain syndrome that most likely represents fibromyalgia. *Id.* at 341. Dr. Huttinger stated that, "[d]ue to [Rios's] extreme intolerability of all medications tried, I do not think it would be helpful to try her on a new medication at this point." *Id.* at 340. Dr. Huttinger discussed the importance of aerobic exercise with Rios and believed that Rios needed "a form of exercise that really gets the heart going in order to benefit [her] conditions." *Id.* at 341. On July 18, 2014, Rios was seen in the Pain and Rehabilitation Center at Mayo Clinic. *Id.* at 336. On July 21, 2014, Rios was seen in the Fibromyalgia and Chronic Fatigue Clinic at Mayo Clinic. *Id.* at 326. Rios was found to have eighteen tender points and two control points, meeting the 1990 and 2010 American College of Rheumatology criteria for fibromyalgia. *Id.* at 334.

On August 11, 2014, Rios met with an occupational therapist, Amanda Parker, at Mayo Clinic. *Id.* at 322. Rios reported "that when she is at home she is always busy because she likes to be." *Id.* Dr. Parker counseled Rios regarding how to return to work at Deere. *Id.* at 323. On August 25, 2014, Rios returned to Mayo Clinic and was examined by Dr. Adam Bledsoe. *Id.* at 314. Dr. Bledsoe diagnosed Rios with widespread joint stiffness and soreness, fibromyalgia, chronic migraine headaches, patellofemoral syndrome and posterior tibial tendon pain of the right ankle. *Id.* at 317.

On November 4, 2014, Dr. Farid Manshadi opined that Rios suffered from chronic pain syndrome, fibromyalgia, numbness and tingling in both upper and lower extremities, disk protrusion in the neck and had small white matter lesions on her brain. *Id.* at 408. On November 14, 2014, Rios received neurostimulation. *Id.* at 406. On November 15, 2014, Rios visited Covenant Medical Center where she was examined by Dr. Anthony Day. *Id.* at 136. Dr. Day described Rios as a "difficult historian," and reported on Rios's complaints of weakness and pain that there was a "[v]ery unclear etiology." *Id.* at 136, 138. Rios received multiple tests during this visit. The results of a head CT scan were

unremarkable, with no acute findings. *Id.* at 192. A spinal CT scan came back normal. *Id.* at 193. An MRI on Rios's thoracic spine and spinal cord was normal. *Id.* at 199.

On November 19, 2014, Rios met with Dr. Marc Hines for a neurological consultation. *Id.* at 146-49. Dr. Hines observed that Rios displayed exceedingly poor effort on a cerebellar exam and on gait testing. *Id.* at 148. Rios "gave almost no effort what so ever" during EMG testing. *Id.* at 148-149. Dr. Hines stated that Rios could well experience fibromyalgia and migraine headaches. *Id.* at 149. Dr. Hines noted:

> What was most noticeable was despite the patient being unable at times to move her finger even to her nose, she was able to swiftly follow the command of placing her hand over her eye. Therefore it was noted throughout the exam that she could follow some commands very swiftly and seemed to be moving her legs and arms relatively normally, but when asked to do very specific maneuvers she would complain of pain, stiffness in her joints and inability to perform these same actions in a more formal setting. The strength could not be reliably tested therefore. I would state that in general the patient has a great deal more strength than she has given us to believe but it is impossible to say how much.

*Id.* at 148. Dr. Hines discussed his "concerns with regard to psychiatric possibilities" with Rios's husband. *Id.* at 149. Rios was referred to the University of Iowa Hospitals and Clinics ("UIHC") to be evaluated in the medical/psychiatric unit.

On November 25, 2014, Dr. Vicki Kijewski evaluated Rios at UIHC. *Id.* at 425. Dr. Kijewski diagnosed Rios's principal problem as conversion disorder, a psychiatric illness in which emotional stress can result in physical symptoms, and Rios's other active problems as chronic lower back pain, chronic headaches, paresthesia of bilateral legs and neck stiffness. *Id.* at 433; *see also Tsoulas v. Liberty Life Assurance Co. of Boston*, 454 F.3d 69, 73 n.2 (1st Cir. 2006) ("A conversion disorder is a rare psychiatric illness in which emotional stress or conflict is expressed through physical symptoms." (quoting *Conversion Disorder*, MayoClinic.com, http://www.mayoclinic.com/health/

conversion-disorder/AN00622)). Dr. Jon Tippin also examined Rios at UIHC. Dr. Tippin did not observe any concerning neurological symptoms. AR at 436. He opined that Rios appeared to have somatization disorder, a psychiatric disorder that results in physical symptoms without a detectable organic basis. *Id.* at 438; s*ee also Chaudhry v. Astrue*, 688 F.3d 661, 665 n.7 (9th Cir. 2012) ("Somatization disorder is a mental disorder characterized by a presentation of a complicated medical history and of physical symptoms referring to a variety of organ systems, but without a detectable or known organic basis." (quoting *Somatization*, Stedman's Medical Dictionary)).

On December 4, 2014, Rios had another appointment with Dr. Christ. Dr. Christ noted that "[w]hen [Rios] got [to UIHC], they basically considered her a psychiatric case, put her on the med psych floor, and the psychiatrist who came around to talk to her diagnosed her with conversion disorder." AR at 463. Rios continued to complain of weakness in her lower extremities but was able to ambulate. *Id.* Dr. Christ noted that "[s]ome of [Rios's] symptoms may be exaggerated and exacerbated by anxiety or some psychosomatic issues, but I am still not convinced looking at her whole picture that is the end full explanation for her symptoms." *Id.* at 464.

### C. Rios's Application for LTD Benefits

In December 2014, Rios applied for LTD benefits with Deere. Rios's SAC benefits were set to expire on February 12, 2015. *Id.* at 96. On December 7, 2014, Rios filled out LTD application documents. *Id.* at 395-96. Rios stated that she was "[u]nable to return to work" and required "24/7 assistance for daily living activities." *Id.* She also stated she was unable to: "[d]rive, write, type, focus, concentrate, deal with stress, [or] communicate well" and had problems with "memory retention, control of bladder, lift[ing] or carry[ing], prolong[ed] sitting, standing [and] walking, sensitiv[ity] to light, noise, humidity." *Id.*

On December 9, 2014, Dr. Christ prepared LTD application documents on behalf of Rios. *Id.* at 394. Dr. Christ stated that Rios's conditions were medical in nature and

7

included weakness bilaterally in the lower extremities, urinary incontinence, headaches, neck pain and back pain. *Id.* Dr. Christ noted that Rios could perform activities of daily living on "most days," but was incapable of performing "[a]ll" job functions. *Id.* Dr. Christ further noted that Rios could perform sedentary work, use her dominant hand, sit for twenty minutes at a time for four hours each day, stand for five minutes at a time for two hours each day and walk for five minutes at a time for half an hour each day. *Id.*

### D. Deere Denies LTD Benefits

On February 3, 2015, Deere denied Rios's claim for LTD benefits. *Id.* at 99. Deere stated that "there is insufficient objective medical evidence to support an organic diagnosis as the basis for [Rios's] disability, and there is no psychiatrist's certification that a 'mental or non-organic disease as a cause for disability. . . is of major and psychotic degree.'" *Id.* (ellipsis in original). On February 6, 2015, Deere informed Rios that her LTD claim had been denied. *Id.* at 96.

Rios continued to seek medical support for her ailments. On February 13, 2015, Rios visited the Institute for Low Back and Neck Care in Bloomington, Minnesota. *Id.* at 88-89. Doctor Steven Stulc examined Rios and noted that "[p]hysical examination [of Rios] reveals a patient who is extremely limited in motion" but that Rios's "reflexes and strength are preserved." *Id.* at 89. Dr. Stulc futher noted some abnormalities on Rios's spinal MRI but could not explain Rios's limited range of motion and pain "simply by looking at her MRI scan." *Id.* On March 4, 2015, APRN Nancy Honeychuck examined Rios and noted that her headaches fit the profile of chronic migraines without aura. *Id.* at 85. Nurse Honeychuck opined that "many of [Rios's] symptoms are . . . likely to be fibromayalgia related" but noted that Rios's "anxiety clearly causes her to focus on physical symptoms." *Id.*

### E. Rios Appeals Deere's Denial

On March 25, 2015, Rios appealed Deere's initial decision to deny her LTD benefits. *Id.* at 81. Rios highlighted her "migraine headaches, fibromyalgia, chronic pain,

8

post-concussion syndrome, pain in her right neck and right shoulder, and back pain" in support of her claim of total disability. *Id.* Rios provided additional medical reports supporting her claim. *Id.* at 85-91. On April 20, 2015, the Social Security Administration ("SSA") found that Rios was eligible for Social Security Disability ("SSD") benefits. *Id.* at 72. On April 29, 2015, Dr. Christ filled out a "Functional Capacity Questionnaire" in which she opined that Rios was not physically capable of working eight hours per day, five days a week, on a sustained basis. *Id.* at 66, 68.

As part of the appeal, Deere hired two independent reviewing physicians, Dr. Stuart Gitlow and Dr. Leonid Topper. *Id.* at 51-61. Dr. Gitlow opined that, from a psychiatric perspective, Rios did not meet the Plan's definition of disabled. *Id.* at 59. Dr. Gitlow stated that "[t]he record fails to eliminate the non-psychiatric causes of the overall symptom pattern, which leaves the diagnosis of conversion disorder as questionable at best." *Id.* at 60. Dr. Gitlow also concluded that, even if Rios had been properly diagnosed with conversion disorder, it did not carry a secondary impairment such to render Rios totally disabled and eligible for LTD benefits under the Plan. *Id.*

Dr. Topper examined and extensively detailed Rios's medical history, including her "post-concussive syndrome, fibromyalgia, chronic pain, and migraine headaches." *Id.* at 53; *see also id.* at 51-57. Dr. Topper stated that Rios's symptoms are "somewhat suggestive of a conversion disorder," but noted that such a diagnosis had not been made by a treating physician. *Id.* at 51. Dr. Topper determined that Rios's "symptoms . . . do not match the typically described pattern of common rheumatologic conditions such as fibromyalgia since the claimant's multiple, unpredictable, memory lapses and pain attacks are not compatible with the much more predictable and steady patterns of fibromyalgia patients." *Id.* at 52. Dr. Topper further stated that, "[c]onsidering the substantial likelihood of conversion reaction and considering the complete absence of neurological explanation for the claimant's symptoms, there is no impairment substantiated from the neurological point of view." *Id.* Based on his review, Dr. Topper concluded that there

9

was "no evidence of total disability and . . . no eligibility for [LTD] benefits." *Id.*

On June 1, 2015, Deere sent Rios a letter denying her appeal ("Denial Letter") for LTD benefits under the Plan. *Id.* at 48.

## V. STANDARD OF REVIEW

A district court must review a denial of benefits "under a de novo standard unless the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). "When a plan reserves 'discretionary power to construe uncertain terms or to make eligibility determinations . . . the administrator's decision is reviewed only for "abuse . . . of his discretion"' by the district court." *Manning v. Am. Republic Ins. Co.*, 604 F.3d 1030, 1038 (8th Cir. 2010) (alterations in original) (quoting *King v. Hartford Life & Accident Ins. Co.*, 414 F.3d 994, 998-99 (8th Cir. 2005) (en banc)). "This deferential standard reflects [the court's] general hesitancy to interfere with the administration of a benefits plan." *Shelton v. ContiGroup Cos., Inc.*, 285 F.3d 640, 642 (8th Cir. 2002) (quoting *Layes v. Mead Corp.*, 132 F.3d 1246, 1250 (8th Cir. 1998)).

Here, the Plan gives Deere discretion to construe the terms and determine eligibility for benefits. *See* AR at 7. "An employee is deemed to be totally disabled when on evidence satisfactory to [Deere] and [Deere's] Medical Director, the employee is unable to perform the duties of the assigned job or an job for which the employee is or may reasonably become qualified based on education, training or experience due to a physical or mental condition caused by illness or injury." *Id.*; *see also Prezioso v. Prudential Ins. Co. of Am.*, 748 F.3d 797, 803 (8th Cir. 2014) (concluding that the phrase "satisfactory to Prudential" conferred discretion on the plan administrator); *Walke v. Grp. Long Term Disability Ins.*, 256 F.3d 835, 839 (8th Cir. 2001) (noting that a plan provision requiring employees to submit "proof 'satisfactory to [the plan administrator]' . . . [is] no different" than other discretion-conferring language). Because the Plan gives Deere discretion, the

abuse-of-discretion standard applies.

Under the abuse of discretion standard, the court "must uphold [the plan administrator's] decision so long as it is based on a reasonable interpretation of the Plan and is supported by substantial evidence." *Hampton v. Reliance Standard Life Ins. Co.*, 769 F.3d 597, 600 (8th Cir. 2014). The court must affirm the plan administrator's decision "if a reasonable person *could* have reached a similar decision, given the evidence before him, not that a reasonable person *would* have reached that decision." *Prezioso*, 748 F.3d at 805 (quoting *Ferrari v. Teachers Ins. & Annuity Ass'n*, 278 F.3d 801, 807 (8th Cir. 2002)). Additionally, only the evidence available to the plan administrator at the time of the denial of benefits is relevant to the court's review. *See King*, 414 F.3d at 999.

## VI. ANALYSIS

Rios argues that Deere abused its discretion in denying her LTD benefits because Deere ignored relevant evidence, Deere's decision was not supported by substantial evidence, Deere had a conflict of interest and Deere's decision is contrary to the decision of the SSA. *See* Rios Brief at 11-24. Deere argues that its decision to deny benefits is supported by substantial evidence. *See generally* Deere Brief. The court will address each argument in turn.

### A. Relevant Evidence

Rios argues that Deere ignored relevant evidence in two ways. First, Rios contends that Deere ignored relevant evidence that she suffered from post-concussion syndrome, migraine headaches and fibromyalgia. *See id.* at 20. Upon review, the court concludes that Deere's denial of benefits was based on a complete review of the record. Deere's Denial Letter stated that "[t]he review of [Rios's] appeal took into account all documents and records provided to the company within the appeal timeframe." AR at 48. Further, the reports of Deere's reviewing doctors, Dr. Gitlow and Dr. Topper, included a thorough review of Rio's medical history, including her headaches, concussive symptoms, fibromyalgia and chronic pain. *See id.* at 51-61. The court, therefore, finds that Deere

11

did not ignore the relevant evidence provided by Rios.

Second, Rios argues that Deere improperly ignored evidence obtained after Deere sent the Denial Letter, including a June 5, 2015 neurological evaluation by Dr. Richard Roberts and July 2, 2015 Mayo Clinic records. *See* Reply at 4-5; *see also* AR at 17-21 (Mayo Clinic records), 26-31 (Dr. Roberts's evaluation). Deere argues that "[t]he Eighth Circuit has made clear that a district court 'clearly exceed[s] the scope of deferential review' when it considers material that was not before the administrator at the time of its decision." Deere Brief at 19 (second alteration in original) (quoting *Cash v. Wal-Mart Gr. Health Plan*, 107 F.3d 637, 642 (8th Cir. 1997)). Rios argues that, even though Deere reached a decision on June 1, 2015, the appeal was not closed until Rios received copies of the medical opinions of Dr. Gitlow and Dr. Topper on July 2, 2015. Reply at 4-5.

Under the abuse of discretion standard, "a reviewing court should consider only the evidence that was before the plan administrator when the claim was denied." *Norris v. Citibank, N.A. Disability Plan (501)*, 308 F.3d 880, 884 (8th Cir. 2002). On June 1, 2015, Deere sent Rios the Denial Letter. AR at 49. The Denial Letter stated that, "[w]ith this reconsideration of the determination, Ms. Rios has exhausted her appeal rights under the Plan. Ms. Rios has the right to bring a civil action under ERISA Section 502(a)." *Id*. The Denial Letter clearly constituted Deere's final decision denying the appeal. Thus, any evidence submitted by Rios after she received the Denial Letter was not before Deere at the time the claim was denied. Accordingly, any evidentiary materials, doctor visits or examinations submitted by Rios after June 1, 2015 will not be considered by the court.

### B. *Substantial Evidence*

Rios argues that Deere's decision to deny her LTD benefits was not supported by substantial evidence.[2] "Substantial evidence is 'more than a scintilla but less than a

---

[2] Rios does not challenge Deere's determination in the Denial Letter that, "[f]rom a psychiatric perspective, there is no psychiatric impairment or related restrictions or
(continued…)

12

preponderance.'" *Smith v. UNUM Life Ins. Co. of Am.*, 305 F.3d 789, 794 (8th Cir. 2002) (quoting *Schatz v. Mut. of Omaha Ins. Co.*, 220 F.3d 944, 949 (8th Cir. 2000)). "A reviewing court may consider both the quantity and quality of evidence before a plan administrator. When a conflict in medical opinions exists, the plan administrator does not abuse his discretion by adopting one opinion, if reasonable, and finding that the employee is not disabled." *Id.* (citation omitted). The court concludes that Deere's denial of benefits was supported by substantial evidence.

Upon review, the court determines that Deere reasonably relied on the opinions of its reviewing physicians. Dr. Topper examined and extensively detailed Rios's medical history, including her "post-concussive syndrome, fibromyalgia, chronic pain, and migraine headaches." AR at 53; *see also id.* at 52-57. Dr. Topper determined that Rios's "symptoms and findings on exam do not add up to any specific recognizable neurological condition." *Id.* at 52. He stated that Rios's "symptoms also do not match the typically described pattern of common rheumatologic conditions such as fibromyalgia since the claimant's multiple, unpredictable, memory lapses and pain attacks are not compatible with the much more predictable and steady pain patterns of fibromyalgia patients." *Id.* Dr. Topper further stated that, "[c]onsidering the substantial likelihood of conversion reaction and considering the complete absence of neurological explanation for [Rios's] symptoms, there is no impairment substantiated from the neurological point of view." *Id.* Therefore, Dr. Topper found "no evidence of total disability and . . . no eligibility for [LTD] benefits." *Id.* Similarly, Dr. Gitlow reviewed Rios's medical history and opined that Rios was not eligible for LTD benefits. *Id.* at 59-61.

---

²(…continued)
limitations present." AR at 48. Rather, Rios states that she "did not make and is not currently making a psychological claim and would concede that for the purpose of this case there is no psychological claim under the plan." Reply at 4. Thus, the court shall limit its review to the challenged determinations.

Deere was entitled to give the opinions of its reviewing physicians precedence. "When there is a conflict of opinion between a claimant's treating physicians and the plan administrator's reviewing physicians, the plan administrator has discretion to deny benefits unless the record does not support denial." *Johnson v. Metro. Life Ins. Co.*, 437 F.3d 809, 814 (8th Cir. 2006); *see also Hunt v. Metro. Life Ins. Co.*, 425 F.3d 489, 491 (8th Cir. 2005) ("The 'treating physician rule'—that opinions of treating physicians must be accorded special weight—does not apply to disability benefit determinations under plans governed by ERISA."). In this case, the record supports denial.

Under the Plan, Rios must be "totally disabled" to qualify for LTD benefits. AR at 7. "An employee is deemed to be totally disabled when . . . the employee is unable to perform the duties of the assigned job or any job for which the employee is or may reasonably become qualified . . . ." *Id.* In this case, Rios's position as a project manager was a sedentary position. *See id.* at 64, 113-15. The record reflects a lack of objective medical evidence supporting Rios's claim that she could not perform sedentary work. Rios received numerous medical tests, including CT scans of her head, *see id.* at 133, 192, 229, 300-01, medical imaging of her head and spine, *id.* at 193, 230, a lumbar puncture, *id.* at 376-79, and neurological exams, *id.* at 129-33, which returned unremarkable or normal results. As such, Rios's claim of disability relies heavily on her subjective complaints and observational test results.

Numerous physicians were skeptical of both Rios's subjective complaints and her observational test results. For example, Dr. Hines noted that Rios performed tests with "no effort at all" and displayed "exceedingly poor effort" at other times. *Id.* at 148. Dr. Hines stated that Rios could perform actions involving moving her legs and arms in a normal setting, "but when asked to do very specific maneuvers she would complain of pain, stiffness in her joints and inability to perform these same actions in a more formal setting. The strength could not be reliably tested therefore. I would state that in general the patient has a great deal more strength than she has given us to believe but it is

14

impossible to say how much." *Id.* Dr. Kijewski similarly stated that Rios displayed a "lack of effort." *Id.* at 427. These opinions call into question the ability of such testing to properly diagnose Rios.

Further, there is significant evidence in the record suggesting that Rios's alleged disabilities may result from, or be exacerbated by, psychosomatic issues. Dr. Christ acknowledged that Rios's symptoms "may be exaggerated and exacerbated by anxiety and psychosomatic issues," and that Rios's "neurologic symptoms seem much more extreme than could be accounted for with fibromyalgia diagnosis." *Id.* at 464. Dr. Kijewski believed that Rios's symptoms were consistent with a conversion disorder. *Id.* at 427. Dr. Tippin opined that Rios "appear[ed] to have somatization disorder." *Id.* at 438. Rios, however, did not agree with opinions suggesting a psychological diagnosis and concedes that she did not make a psychological claim for LTD. *See* Reply at 4.

Finally, Rios's contention that she cannot perform sedentary work is contradicted by other evidence on the record. In July 2014, Dr. Huttinger, who first diagnosed Rios with fibromyalgia, advised Rios to engage in aerobic exercise to combat the fibromyalgia. AR at 340-41. In August 2014, Rios reported that she "is always busy" at home and had "no difficulties" with quiet recreation. *Id.* at 322. At that time, Rios's occupational therapist, Dr. Parker, counseled Rios regarding steps that she could take to return to work. *Id.* at 323. Finally, Dr. Christ, in the "Health Care Provider Statement of Employee's Long Term Disability" application, opined that Rios could perform activities of daily living on "most days," but was incapable of performing "[a]ll" job functions. *Id.* at 394. Dr. Christ further stated that Rios could perform sedentary work, use her dominant hand, sit for twenty minutes at a time for four hours each day, stand for five minutes at a time for two hours each day and walk for five minutes at a time for half an hour each day. *Id.* As such, the record suggests that Rios may be able to perform sedentary work.

Upon review, the court determines that the record presents conflicting evidence regarding Rios's alleged disability. Deere's reviewing physicians, Dr. Gitlow and Dr.

15

Topper, extensively reviewed the medical record and found that Rios was not eligible for LTD benefits under the Plan. Viewing the record as a whole, the court finds that Deere did not abuse its discretion when it followed the advice of its own medical personnel in concluding that Rios was not eligible for benefits. *See Smith*, 305 F.3d at 794 ("When a conflict in medical opinions exists, the plan administrator does not abuse his discretion by adopting one opinion, if reasonable, and finding that the employee is not disabled."). Accordingly, the court determines that Deere's decision was supported by substantial evidence.

### C. *Conflict of Interest*

Rios argues that a conflict of interest exists because "Deere both funds and administers the [P]lan." Rios Brief at 23. The court finds that a conflict of interest does exist for this reason and that such conflict of interest must be considered as a factor in determining whether Deere abused its discretion. *See Hampton*, 769 F.3d at 601; *see also Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 112, 115-19 (2008). The court, however, finds no evidence that the conflict of interest improperly influenced Deere's denial of LTD benefits. Further, as discussed, substantial evidence supports Deere's decision. As such, this is not the type of close case where "[a] conflict of interest can act as a tiebreaker [because] the issue is close" or where a conflict of interest "assume[s] great importance [because] circumstances suggest a higher likelihood that it affected the benefits decision." *Jones v. ReliaStar Life Ins. Co.*, 615 F.3d 941, 946 (8th Cir. 2010) (quotations omitted). Thus, the court finds that this conflict of interest does not establish an abuse of discretion in light of the record as a whole.

### D. *SSA's Determination of Disability*

Rios argues that the fact that Deere provided her an attorney for her SSD claim, but ignored the SSA's decision granting benefits, is "an additional factor to consider in determining whether an abuse of discretion has occurred." Rios Brief at 23-24. The Eighth Circuit has repeatedly held that "[p]lan administrators are not bound by SSA

findings of disability." *Carrow v. Standard Ins. Co.*, 664 F.3d 1254, 1259 (8th Cir. 2012). This is true "even when the plan's definition of disabled is similar to the definition the SSA applied." *Farfalla*, 324 F.3d at 975. Here, the Plan and the SSA set out different criteria for determining benefit eligibility. However, even if the Plan and SSA had similar definitions of total disability, the SSA's decision would still not be binding on Deere. *See id.* Accordingly, the SSA's determination of disability does not weigh on whether Deere abused its discretion.

## VII. CONCLUSION

In light of the foregoing, Deere's decision denying benefits is **AFFIRMED**. The Clerk of Court is **DIRECTED** to enter Judgment in favor of Defendant Deere & Company and against Plaintiff Maria Rios and to **CLOSE THIS CASE**.

**IT IS SO ORDERED**.

**DATED** this 6th day of July, 2018.

LINDA R. READE, JUDGE
UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF IOWA